IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ROBERT MARINO,

    Plaintiff,

v.                                                           CV 12-0597 GBW/WPL

COUNTY OF SIERRA and
SHERIFF JOE E. BACA, J.R.
individually and in his official
capacity as Sheriff of the County
of Sierra,

    Defendants.

## ORDER

This matter is before the Court on Defendants' Motion for Summary Judgment on Plaintiff's Whistleblower Protection Act Claim. *Doc. 97*. The Court, having reviewed the motion and accompanying briefing (*docs. 110, 117*), and being fully advised, will GRANT Defendants' Motion.

I. **BACKGROUND**

The facts underlying this matter are set forth in the Court's order issued on June 25, 2013. *See doc. 92*. The Court will therefore only briefly summarize the events relevant to this motion here. Plaintiff Robert Plaintiff was employed as a deputy sheriff for Sierra County from May 8, 2008, to March 1, 2012. *Doc. 20* ¶¶ 10, 36; *Doc. 73* at 3, 7. Defendant Joe Baca was Sheriff of Sierra County at all points relevant to this complaint.

*Doc. 20* ¶ 12; *Doc. 73* at 3.  On or about the beginning of January 2012, Plaintiff became aware that Baca sought to promote a subordinate, Officer Montoya, to the position of corporal without first posting notice of the open position as required by Sierra County employment policy.  *Doc. 96,* Ex. 2; *doc. 110*, Ex. C at 23:1-6.  As a result Sheriff Baca's improper action, other candidates, including Plaintiff's subordinate Officer Jeff Jones, were not able to apply for the position.  *Doc. 20* ¶ 14; *doc. 110*, Ex. D at 14:24-16:8, 18:4-20:6.  Plaintiff and Officer Jones reported the apparent violation to Sierra County Human Resources Administrator Janette Monsibaiz.  Subsequently, Sheriff Baca revoked his offer to promote Officer Montoya, and a notice of the open the position was reposted. *Doc. 96,* Ex.1 at 17:2-18:3, Ex. 5 at 21:18-22:1.

On February 5, 2012 (Super Bowl Sunday), Plaintiff, in his capacity as a field training officer, was assigned a new deputy sheriff, Deputy Ohst.  *Id.* ¶¶ 18-19; *Doc. 73* at 4.  Plaintiff decided to take Deputy Ohst to Monticello Box Canyon to show him some of the remote areas of Sierra County.  *Id.* ¶¶ 20-26.  Because this area was out of radio range, Plaintiff notified Sierra County Dispatch that he would be out of communication for a period of time.  *Id.* ¶ 21.  While in the canyon, Plaintiff drove his vehicle into a pool of water where it became stuck.  It took several hours to remove the unit, leading Plaintiff to be out of radio communication for approximately five hours.  *Id.* ¶¶ 28-32.  The unit was ultimately deemed a total loss. Record Proper (RP) at 610.

2

On February 6, 2012, Sheriff Baca ordered an internal investigation of the events of February 5, 2012. *Doc. 20* ¶ 34. On March 1, 2012, based on this investigation, Baca notified Plaintiff of the County's intent to terminate him. RP 64-65. Plaintiff challenged the intent to terminate in a pre-termination hearing held on March 22, 2012. *Id.* ¶ 38; RP 288. His challenge was denied and Plaintiff was terminated. *Id.* ¶ 39; RP 288.

Pursuant to Sierra County Personnel Ordinance § 8 (RP 245), Plaintiff pursued his right to have a post-termination grievance hearing. A hearing was held on April 25, 2012. *Id.* at 217. After the post-termination hearing, the termination was upheld. *Doc. 20* ¶¶ 41-43; RP 217-19.

Plaintiff filed his original complaint on June 1, 2012, *doc. 1*, and an amended complaint on November 28, 2012, *doc. 20.* Plaintiff initially requested two distinct forms of relief: appellate review of the administrative decision to terminate Plaintiff, and damages under 42 U.S.C. § 1983 and the New Mexico Whistleblower Protection Act NMSA 1978 § 10-16C-1 *et seq*. (WPA). *Id.* On June 25, 2013, the Court denied Plaintiff's appeal. *Doc. 92.* Defendants filed the instant motion for summary judgment on Plaintiff's WPA claim on August 22, 2013. *Doc. 97.* Briefing was complete on October 18, 2013. *Doc. 117.*

## II.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), this Court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once the movant meets this burden, Rule 56(c) requires the non-moving party to designate specific facts showing that there is a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

"An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Thom v. Bristol Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (internal citation omitted). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ." Fed. R. Civ. P. 56(c)(1)(A). All material facts set forth in the motion and response which are not specifically controverted are deemed undisputed. D.N.M.LR-Civ. 56.1(b).

When reviewing a motion for summary judgment, the court should keep in mind three principles. First, the court's role is not to weigh the evidence, but to assess the threshold issue whether a genuine issue exists as to material facts requiring a trial. *See Liberty Lobby*, 477 U.S. at 249. Second, the court must resolve all reasonable inferences and doubts in favor of the non-moving party, and construe all evidence in the light

4

most favorable to the non-moving party. *See Hunt v. Cromartie*, 526 U.S. 541, 550–55 (1999). Third, the court cannot decide any issues of credibility. *See Liberty Lobby*, 477 U.S. at 255. "[T]o survive the . . . motion, [the nonmovant] need only present evidence from which a jury might return a verdict in his favor." *Id*. at 257.

### III.   UNDISPUTED FACTS

1. Plaintiff was employed by the Sierra County Sheriff's Department as a corporal at all times relevant to this action. *Doc. 96* at 4; *doc. 110* at 2.

2. Sheriff Joe Baca took office as Sheriff of Sierra County on January 1, 2012, and was serving as Sheriff of Sierra County at all times relevant to this action. *Doc. 20* ¶ 12.

3. At some point between January 1 and January 17, 2012, Sheriff Baca offered Officer Montoya a promotion to an open position as corporal in the Sierra County Sheriff's Department. *Doc. 96*, Ex. 1 at 15:13-20.

4. At some point between January 1 and January 17, 2012, Plaintiff became aware that Sheriff Baca sought to promote Officer Montoya, in violation of country hiring procedures. *Doc. 110*, Ex. D 14:13-16:8.

5. On or about January 17, 2012, Plaintiff and Officer Jeff Jones approached Sierra County Human Resources Administrator Ms. Janette Monsibaiz about Officer Montoya's improper promotion. *Doc. 96*, Ex. 2 at 17:2-18:3, Ex.

6. At some point thereafter, the proposed promotion was rescinded. *Doc. 96,* Ex. 5 at 21:15-22:1; *doc.* 110, Ex. C at 23:1-25:4.

7. Plaintiff did not, at any point, directly communicate to Sheriff Baca that Plaintiff had complained about the promotion to Ms. Monsibaiz. *Doc. 96*, Ex. 2 at 92:7-9, 93:9-94:4.

8. On February 5, 2012, Plaintiff was involved in an accident with an official county vehicle that resulted in that vehicle being deemed a total loss. RP 610.

9. On February 6, 2012, Sheriff Baca ordered Lieutenant Glenn Hamilton to investigate the accident. RP 635.

10. On February 6, 2012, County Manager of Sierra County Jan Porter Carrejo learned of this accident. *Doc. 96*, Ex. 6 ¶¶ 4-6.

11. On February 7, 2012, based on the report of the accident provided by Lieutenant Hamilton of the Sierra County Sheriff's Department and the damage caused to the vehicle, Ms. Carrejo approved the immediate termination, rather than progressive discipline was the appropriate measure of discipline, of Plaintiff. *Doc. 96,* Ex. 5 at 39:9-15, 43:25, Ex. 6 ¶¶ 4-6

12. At the time that Ms. Carrejo approved the discipline of Plaintiff, she had no knowledge that Plaintiff had reported the proposed improper promotion to Ms. Monsibaiz. *Doc. 96*, Ex. 6 ¶ 7.

13. Sheriff Baca sent Plaintiff a Notice of Intent To Terminate on March 1, 2012. The notice stated that Plaintiff's conduct surrounding the accident was the basis for his termination. RP 64-65.

14. Plaintiff's termination was ultimately affirmed after a post-termination hearing held on April 26, 2012. RP 217.

IV.     **ANALYSIS**

Plaintiff contends that he was terminated by Sierra County in retaliation for reporting Sheriff Baca's apparent violation of Sierra County employment policies, in violation of the New Mexico Whistleblower Protection Act. *Doc. 110* at 6-8. Defendants argue that Plaintiff is collaterally estopped from bringing his WPA claim due to this Court's prior ruling denying Plaintiff's appeal of the administrative decision upholding his termination. In the alternative, they assert that Plaintiff's claim must fail because he cannot establish that any person responsible for his termination had knowledge of his alleged protected activity.[1] For the following reasons, I find that Plaintiff is not collaterally estopped from raising his WPA claim, but that Sierra County is not liable under the WPA given the lack of evidence of knowledge. Consequently, Defendants motion will be granted.

---

[1] Defendants also argue that they are entitled to an affirmative defense as a matter of law. Because the Court agrees with the "knowledge" argument, there is no need to address the affirmative defense theory.

### A.    Plaintiff is not pursuing a WPA claim against Sheriff Baca.

Defendant's motion first argues that Defendant Baca is not a "public employer" pursuant to the WPA and, therefore, is not a proper defendant on such a claim. *Doc. 96* at 8-11.  In response, "Plaintiff does not dispute Baca is not a public employer as the term is defined by the WPA and does not assert its WPA [claim] against Baca in either his individual of official capacity." *Doc. 110* at 4.  Thus, to the extent that Plaintiff's Complaint included a WPA claim against Defendant Baca, it is hereby dismissed with prejudice.

### B.    Plaintiff is not collaterally estopped from raising his WPA claim

Defendants argue that, based on the Court's denial of Plaintiff's appeal (*doc. 92*), Plaintiff should be collaterally estopped from bringing his WPA claim.  For this proposition, Defendants rely on *Mascarenas v. City of Albuquerque*, 274 P.3d 781 (N.M. Ct. App. 2012).  There, the New Mexico Court of Appeals upheld the lower court's decision that a plaintiff who had appealed the City personnel board's decision to terminate her was collaterally estopped from concurrently filing a civil action against the City on the basis of that termination.  The plaintiff's civil action in that case consisted of a breach of contract claim, a due process claim, and claim for violation of the plaintiff's rights under the FMLA. *Id.* at 785.  The appellate court affirmed the lower court's reasoning that since the plaintiff had the opportunity to fully and fairly litigate each of these claims before the administrative tribunal, and the lower court affirmed the tribunal's decision,

the civil complaint constituted an improper relitigation of the factual predicates at issue. *Id.* at 788-791. Plaintiff counters that *Mascarenas* is inapposite because the administrative proceeding included no consideration of retaliation as a motivating factor in Plaintiff's termination. *Doc. 110* at 6. The Court agrees with Plaintiff.

While *Mascarcenas* is potentially applicable to the remainder of Plaintiff's civil complaint, it is not applicable to Plaintiff's WPA claim. The purpose of collateral estoppel is to promote judicial efficiency by preventing the relitigation of ultimate facts or issues actually and necessarily decided in a prior suit. *Shovelin v. Cent. N.M. Elec. Coop.*, 850 P.2d 996, 1000 (N.M. 1993). Under New Mexico law, "administrative adjudicative determinations may be given preclusive effect if rendered under conditions in which the parties have the opportunity to fully and fairly litigate the issue at the administrative hearing." *Id.* at 1001.

Defendants, because they invoke the doctrine, bear the burden of introducing sufficient evidence to demonstrate that collateral estoppel is applicable by showing "(1) the party to be estopped was a party to the prior proceeding, (2) the cause of action in the case presently before the court is different from the cause of action in the prior adjudication, (3) the issue was actually litigated in the prior adjudication, and (4) the issue was necessarily determined in the prior litigation." *Shovelin*, 850 P.2d at 1000.

The record clearly demonstrates the first two factors: Plaintiff was a party to the appeal and his WPA claim is different from his appeal of his termination. Defendants

also contend that the final two factors are met because what is at issue is the propriety of Plaintiff's termination (*i.e.* that it was made for legitimate reasons alone and for no retaliatory motive), and by upholding the termination decision upon appeal, this Court has affirmed that the termination did not violate the WPA. *Doc. 96* at 15.

Defendants overstate the effect of this Court's prior order. What this Court affirmed is that the administrative hearing judge (AHJ) conducted a *de novo* review of Plaintiff's termination and properly determined that there was substantial evidence in the record to uphold his termination. *Doc. 92* at 7-12. As the Court explained in that order, the issue of retaliatory motive (central to a WPA claim) would have been irrelevant to the AHJ's decision regarding whether termination was a proper penalty for destroying a county vehicle. *Id.* at 8 ("the AHJ is tasked with deciding what she thinks should be done, not ruling on the propriety of the Sheriff's decision. Given the nature of this review, it is not clear how the allegedly improper motive by the Sheriff should be relevant to the AHJ's decision.") The record shows that while Plaintiff attempted to raise the issue of retaliatory motive at his post-termination hearing, he was denied the opportunity to do so by the AHJ. RP 217. The Court therefore finds that the issue of whether there was a retaliatory motive in Plaintiff's firing was not actually litigated, nor necessarily determined, in the prior proceeding.

Because Defendants failed to carry their burden of demonstrating that collateral estoppel is applicable to Plaintiff's WPA claim, the Court will deny summary judgment on this basis.

### C. The Lack of "Knowledge" Evidence Defeats Liability of Sierra County Under the WPA

Having determined that Plaintiff's claim is not collaterally estopped, the Court turns to the issue of Defendant Sierra County's liability under the WPA. Defendant Sierra County asserts that the Court should grant it judgment as a matter of law because Plaintiff cannot establish any person involved in his termination had knowledge of his alleged protected activity. *Doc. 96* at 10-12.

As is relevant here, the WPA prevents a public employer from "tak[ing] any retaliatory action against a public employee because the public employee communicates to the public employer or a third party information about an action or a failure to act that the public employee believes in good faith constitutes an unlawful or improper act." NMSA 1978, § 10-16C-3(A). In the three years since the WPA's enactment in 2010, the New Mexico appellate courts have not had occasion to lay out the requisite elements. In the absence of such guidance, this Court may rely on the interpretation of similarly worded federal statutes. *Smith v. FDC Corp.*, 787 P.2d 433, 436 (N.M. 1990). As Defendants point out, the language of the New Mexico WPA bears a close relationship to the federal Whistleblower Protection Act (FWPA), 5 U.S.C. § 2302. The FWPA protects federal employees from retaliatory employment actions "because of . . . any

11

disclosure of information by an employee . . . which the employee . . . reasonably believes evidences any violation of any law, rule, or regulation." 5 U.S.C. § 2302(a) & (b)(8)(A)(i). *Doc. 117* at 5-6.  Given the similarity of these statutes, the Court will rely on the interpretation of the FWPA in conducting its analysis.  In order to demonstrate a violation of the FWPA, "the [claimant] must prove: (1) the acting official has the authority to take, recommend, or approve any personnel action; (2) the aggrieved employee made a disclosure protected under section 2302(b)(8); (3) the acting official used his authority to take, or refuse to take, a personnel action against the aggrieved employee; and (4) the acting official took, or failed to take, the personnel action against the aggrieved employee because of the protected disclosure." *Eidmann v. Merit Systems Protection Bd.*, 976 F.2d 1400, 1407 (Fed. Cir. 1992).

Applying this test to the instant matter, the acting officials who had the authority to recommend and approve Plaintiff's termination on behalf of Defendant Sierra County were Sheriff Baca and County Manager Carrejo.  RP 64-65, 232, 241, *doc. 96* Ex. 3 ¶¶ 3, 6-7.  The parties do not dispute that Plaintiff engaged in a "protected activity." Both Baca and Carrejo actually took the requisite steps to facilitate the termination, with Sheriff Baca and recommending and notifying Plaintiff of his termination and County Manager Carrejo authorizing it. RP 64-65, 232, 241, *doc. 96* Ex. 3 ¶¶ 3, 6-7.  Thus, the first three elements are met.  The issue in this case is whether there is sufficient evidence for

the last element: that an acting official took, or failed to take, the personnel action against the aggrieved employee **because of** the protected disclosure.

Defendants argue that this element necessarily requires that an acting official – Defendant Baca or County Manager Carrejo – know of Plaintiff's protected activity. *Doc. 96* at 11-12; *doc. 117* at 7-9. Plaintiff, for his part, does not take a clear position on this question. The entirety of his response to this issue is to note that "the statutory language of the WPA does not expressly require the appointing authority have knowledge of the protected activity." *Doc. 110* at 4. However, he never expressly contends that such a requirement is unnecessary, let alone points to legal authority which contradicts the reasoning and authority presented by Defendants.

In any event, the Court agrees with Defendants on this point. In the context of a retaliatory tort, taking an action "because of" a protected activity means that the alleged tortfeasor was, at least in part, subjectively motivated by the protected activity. *See Hinds v. Sprint/United Management Co.*, 523 F.3d 1187, 1203 (10th Cir. 2008). A person cannot be subjectively motivated by something of which he/she is not aware. *See e.g., Robertson v. Bell Helicopter Textron, Inc.*, 32 F.3d 948, 951 (5th Cir. 1994) ("[A] whistleblower must show the employer had knowledge the employee engaged in 'protected activity.'") (citations and quotations omitted). Therefore, to establish a *prima facie* WPA violation, Plaintiff must show knowledge of the protected activity by at least

one of the acting officials. *See e.g., Haley v. Fiechter*, 953 F. Supp. 1085, 1094 (E.D. Mo. 1997).

Plaintiff concedes that he has uncovered no direct evidence of knowledge on the part of Defendant Baca or Manager Carrejo. *Doc. 110* at 4-5. In fact, both deny any such knowledge, and Plaintiff admits that he told neither of them. *Doc. 96*, Ex.1 at 6:8-22; Ex. 2 at 92:7-9, 93:9-94:4 ; Ex. 6 ¶ 7. Of course, this is not the end of the inquiry. In ruling on Defendants' summary judgment motion, the Court must resolve all reasonable inferences and doubts in favor of Plaintiff. But Plaintiff has also failed to point to specific facts from which Defendant Baca's or Manager Carrejo's knowledge can be inferred.[2]

Plaintiff points to the following facts to support such an inference:
(1) The Human Resources Director, Janette Monsibaiz, was the person to whom Plaintiff complained about the improper promotion. Thus, Director Monsibaiz had actual knowledge of the protected activity. *Doc. 110* at 4.

---

[2] For clarification, the Court notes the common conflation of "constructive knowledge" and circumstantial evidence from which actual knowledge can be inferred. While these concepts are often referred to interchangeably, the distinction is important in the instant case. Most precisely, "constructive knowledge" refers to something a person, through the exercise of reasonable care, ought to know regardless of whether the person actually knows it. For example, an employer in a sexual harassment case cannot avoid liability for the harassment by successfully avoiding actual knowledge of the harassment. In such a circumstance, the law recognizes that "constructive knowledge" is sufficient to create the obligation to respond. If, however, a plaintiff must show a subjective wrongful intent, as with a retaliatory tort, "constructive knowledge" so defined is not applicable. Only evidence of actual knowledge is sufficient. However, this does not mean that a retaliatory tort plaintiff must rely on **direct** evidence of intent such as a "confession" by the alleged tortfeasor. The plaintiff may point to **circumstantial** evidence from which a reasonable jury could infer that the alleged tortfeasor had actual knowledge.

(2) "Sierra County government is a small community." *Id*. at 8.

(3) The Human Resources Director "spoke to both Sheriff Baca and the County Manager about the violation of County policy and the need to repost the position." *Id*.

(4) Defendant Baca was unhappy about having to repost the position.[3] *Id*.

(5) The temporal proximity between Plaintiff's complaint and Plaintiff's termination. *Id*. at 5.

From these facts, it would be mere speculation, rather than a reasonable inference, that either Defendant Baca or Manager Carrejo knew that Plaintiff had been the one who complained about the improper promotion. None of the parties to the conversations about reposting the deputy position (Defendant Baca, Manager Carrejo and Director Monsibaiz) testify that Baca or Carrejo were advised the reposting was the result of a complaint from Plaintiff. Defendant Baca's unhappiness about the reposting provides no basis to conclude that he knew Plaintiff was the source of the complaint. It is true that a close temporal proximity between protected activity and an adverse action may justify an inference of retaliatory motive. *See O'Neal v. Ferguson Const. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001). However, this inference is only applicable where knowledge of the protected activity on the part of the adverse decision maker is already

---

[3] The deposition of Lieutenant Hamilton, which is attached to Plaintiff's Response, also reflects Hamilton's testimony that Sheriff Baca was aware that "a deputy" had complained about the proposed promotion of Officer Montoya. *Doc. 110*, Ex. A at 47:5-16, 48:16-18, Ex. C at 24:21-25:9. However, Plaintiff does not mention this fact nor cite to this portion of the record regarding this issue as required by Rule 56(c)(1). Consequently, the Court need not consider it. *See* Fed. R. Civ. P. 56((c)(3). Nonetheless, without any evidence regarding the number of deputies in Sierra County, this fact would not change the Court's conclusion.

15

established.  *Id*. at 1252 (adverse decision-making supervisor was aware of protected activity); *see also Serrano v. Veneman*, 410 F. Supp.2d 1049, 1059 (D.N.M. 2005) (to establish causal connection, plaintiff must show **both** temporal proximity and decision maker's knowledge of protected activity).  Mere closeness in time cannot reasonably stand in for both knowledge and retaliatory intent especially here where Plaintiff's misconduct with the County vehicle occurred between the protected activity and his termination.

Defendant has shown the absence of evidence that would support a reasonable jury finding that Defendant Baca or Manager Carrejo knew that Plaintiff was the person who complained about the improper promotion.  Plaintiff's response has failed to designate specific facts which would show a genuine issue as to this fact at trial.  Without evidence of such knowledge, Plaintiff cannot establish that his termination was "because of" his complaint.  His claim under the WPA therefore fails as a matter of law.

V. **CONCLUSION**

Plaintiff's WPA claim is not collaterally estopped by his appeal because he was unable to litigate the factual predicates of that claim at the administrative level.  His WPA claim fails as a matter of law, however, because he has failed to demonstrate that either official involved in his termination had knowledge of his protected activity when the termination decision was made.  Defendants' Motion for Summary Judgment (*docs.*

*96, 97*) is GRANTED.  Plaintiff's WPA claim (Count IV)[4] against Defendants Joe Baca and Sierra County is DISMISSED WITH PREJUDICE.

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE
**Presiding by consent**

---

[4] Plaintiff's Amended Complaint labels this claim as Count III, but as it is the fourth count, the Court refers to it as Count IV.