IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ROBERT MARINO,

      Plaintiff,

v.                                               CV 12-0597 GBW/WPL

COUNTY OF SIERRA and
SHERIFF JOE E. BACA, J.R.
individually and in his official
capacity as Sheriff of the County
of Sierra,

      Defendants.

## ORDER

      This matter is before the Court on Defendants' Motion for Summary Judgment on Plaintiff's Civil Rights Claims. *Doc. 98*. The Court, having reviewed the motion and accompanying briefing (*docs. 111, 118*), and being fully advised, will GRANT Defendants' Motion.

## I.   BACKGROUND

      The facts underlying this matter are set forth in the Court's order issued on June 25, 2013. *See doc. 92*. The Court will therefore only briefly summarize the events relevant to this motion here. Plaintiff Robert Plaintiff was employed as a deputy sheriff for Sierra County from May 8, 2008, to March 1, 2012. *Doc. 20* ¶¶ 10, 36; *Doc. 73* at 3, 7. Defendant Joe Baca was Sheriff of Sierra County at all points relevant to this complaint. *Doc. 20* ¶ 12; *Doc. 73* at 3. On or about the beginning of January 2012, Plaintiff became

1

aware that Baca sought to promote a subordinate, Officer Montoya, to the position of corporal without posting notice of the open position in accordance with Sierra County employment policy.  *Doc. 96,* Ex. 2; *doc. 110,* Ex. C at 23:1-6.  As a result of Sheriff Baca's apparently improper action, other candidates, including Plaintiff's subordinate Officer Jeff Jones, were not able to apply for the position.  *Doc. 20* ¶ 14; *doc. 110,* Ex. D at 14:24-16:8, 18:4-20:6.  Plaintiff and Officer Jones reported the violation to Sierra County Human Resources Administrator Janette Monsibaiz, and the position was reposted. *Doc. 96,* Ex.1 at 17:2-18:3, Ex. 5 at 21:18-22:1.

On February 5, 2012, Plaintiff, in his capacity as a field training officer, was assigned a new deputy sheriff, Deputy Ohst.  *Id.* ¶¶ 18-19; *Doc. 73* at 4.  Plaintiff decided to take Deputy Ohst to Monticello Box Canyon to show him some of the remote areas of Sierra County.  *Id.* ¶¶ 20-26.  Because this area was out of radio range, Plaintiff notified Sierra County Dispatch that he would be out of communication for a period of time. *Id.* ¶ 21.  While in the canyon, Plaintiff drove his vehicle into a pool of water where it became stuck. It took several hours to remove the unit, leading Plaintiff to be out of radio communication for approximately five hours.  *Id.* ¶¶ 28-32.  The unit was ultimately deemed a total loss. Record Proper (RP) at 610.

On February 6, 2012, Baca ordered an internal investigation of the events of February 5, 2012.  *Doc. 20* ¶ 34.  Based on this investigation, Baca communicated to Plaintiff his intent to terminate Plaintiff on March 1, 2012.  RP at 64-65.  Plaintiff

2

challenged the termination in a pre-termination hearing held on March 22, 2012.  *Id.* ¶ 38; RP at 288.  His challenge was denied and Plaintiff was terminated.  *Id.* ¶ 39; RP at 288.

Pursuant to Sierra County Personnel Ordinance § 8 (RP at 245), Plaintiff pursued his right to have a post-determination grievance hearing.  A hearing was held on April 25, 2012.  *Id.* at 217.  After the post-determination hearing, the termination was upheld. *Doc. 20* ¶¶ 41-43; RP at 217-19.

Plaintiff filed his original complaint on June 1, 2012, *doc. 1*, and an amended complaint on November 28, 2012, *doc. 20.*  Plaintiff initially requested two distinct forms of relief: appellate review of the administrative decision to terminate Plaintiff, and damages under 42 U.S.C. § 1983 and the New Mexico Whistleblower Protection Act, NMSA 1978 § 10-16C-1 *et seq.* (WPA). *Id.*  On June 25, 2013, the Court denied Plaintiff's appeal.  *Doc. 92.*  Defendants filed the instant motion for summary judgment on Plaintiff's § 1983 claims on August 22, 2013.  *Doc. 98.*  Briefing was complete on October 18, 2013.  *Doc. 118.*

## II.   STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), this Court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The movant bears the initial burden of "show[ing] that there is an absence of evidence to

support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  Once the movant meets this burden, Rule 56(c) requires the non-moving party to designate specific facts showing that there is a genuine issue for trial.  *See Celotex Corp.*, 477 U.S. at 324; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

"An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way.  An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Thom v. Bristol Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (internal citation omitted).  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."  Fed. R. Civ. P. 56(c)(1)(A).  All material facts set forth in the motion and response which are not specifically controverted are deemed undisputed. D.N.M.LR-Civ. 56.1(b).

When reviewing a motion for summary judgment, the court should keep in mind three principles.  First, the court's role is not to weigh the evidence, but to assess the threshold issue whether a genuine issue exists as to material facts requiring a trial.  *See Liberty Lobby*, 477 U.S. at 249.  Second, the court must resolve all reasonable inferences and doubts in favor of the non-moving party, and construe all evidence in the light most favorable to the non-moving party.  *See Hunt v. Cromartie*, 526 U.S. 541, 550–55 (1999).  Third, the court cannot decide any issues of credibility.  *See Liberty Lobby*, 477

U.S. at 255. "[T]o survive the . . . motion, [the nonmovant] need only present evidence from which a jury might return a verdict in his favor." *Id*. at 257.

**III.    UNDISPUTED FACTS**

1.  Plaintiff was employed by the Sierra County Sheriff's Department as a corporal at all times relevant to this action. *Doc. 96* at 4; *doc. 110* at 2.

2.  Joe Baca took office as Sheriff of Sierra County on January 1, 2012, and was serving as Sheriff of Sierra County at all times relevant to this action. *Doc. 20* ¶ 12.

3.  At some point between January 1 and January 17, 2012, Sheriff Baca offered Officer Montoya a promotion to an open position as corporal in the Sierra County Sheriff's Department. *Doc. 96*, Ex. 1 at 15:13-20.

4.  At some point between January 1 and January 17, 2012, Plaintiff became aware that Sheriff Baca sought to promote Officer Montoya in what Plaintiff believed to be a violation of County hiring procedures. *Doc. 110*, Ex. D at 14:13-16:8.

5.  On or about January 17, 2012, Plaintiff and Officer Jeff Jones approached Sierra County Human Resources Administrator Ms. Janette Monsibaiz about Officer Montoya's apparently improper promotion. *Doc. 96*, Ex. 2 at 17:2-18:3, Ex.

6.  At some point thereafter, the proposed promotion was rescinded. *Doc. 96,* Ex. 5 at 21:15-22:1; *doc.* 110, Ex. C at 23:1-25:4.

5

7.  On February 5, 2012, Plaintiff was involved in an accident with an official county vehicle that resulted in that vehicle being deemed a total loss. RP at 610.

8.  On February 6, 2012, Sheriff Baca ordered Lieutenant Glenn Hamilton to investigate the accident.  RP at 635.

9.  On February 6, 2012, County Manager of Sierra County Jan Porter Carrejo learned of this accident. *Doc. 96*, Ex. 6 ¶¶ 4-6.

10. On February 7, 2012, based on the report of the accident provided by Lieutenant Hamilton and the extensive/significant damage caused to the vehicle, Ms. Carrejo approved immediate termination as the appropriate measure of discipline for Plaintiff. *Doc. 96*, Ex. 5 at 39:9-15, 43:25, Ex. 6 ¶¶ 4-6

11. At the time that Ms. Carrejo approved the discipline of Plaintiff, she had no knowledge that Plaintiff had reported the proposed improper promotion to Ms. Monsibaiz. *Doc. 98*, Ex. 6 ¶ 7.

12. Sheriff Baca sent Plaintiff a Notice of Intent to Terminate on March 1, 2012.  The notice stated that Plaintiff's conduct in regard to the accident was the basis for his termination.  RP at 64-65.

13. A pre-termination hearing was conducted on March 22, 2012, at which Plaintiff appeared.  RP at 74, 88.

14. Plaintiff's termination was ultimately affirmed on March 28, 2012.  RP at 288.

6

15. Plaintiff requested, and received, a post-deprivation hearing on April 26, 2012, where he was represented by counsel. RP at 90, 92, 217.  His termination was ultimately upheld.

IV.   **ANALYSIS**

Plaintiff brings two federal civil rights claims against Defendants, charging that his termination violated his First Amendment right to be free of retaliation for exercising his right to speak, and his Fourteenth Amendment right to procedural due process[1] during the post-deprivation hearing.  *Doc. 20* at 8-12.  Defendants respond that Sheriff Baca is entitled to qualified immunity because Plaintiff cannot establish that Defendants violated either of these rights.  As there was no underlying violation, Defendants argue, Defendant Sierra County is also entitled to judgment as a matter of law on the same basis. *See Hinton v. City of Elwood*, 997 F.2d 774 (10th Cir. 1993).

A.      **Qualified immunity standard**

Qualified immunity protects public officials from liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "When a defendant asserts

---

[1] Plaintiff's complaint consistently refers to this claim as based on his right to **procedural** due process. *Doc. 20* at 10-12.  However, in his response to the instant motion, he makes a passing reference to a violation of his **substantive** due process rights during the post deprivation hearing.  *Doc. 111* at 5. Notwithstanding that allusion to a different claim, the Court need not address a substantive due process theory as it is not included in his Complaint.

qualified immunity at the summary judgment stage, the burden shifts to the plaintiff who must clear two hurdles to defeat the defendant's motion.  The plaintiff must demonstrate, on the facts alleged, that (1) the defendant violated a constitutional right, and (2) the right was clearly established at the time of the alleged unlawful activity." *Lundstrom v. Romero*, 616 F.3d 1108, 1118 (10th Cir. 2010) (citations omitted). "A constitutional right is clearly established when, at the time of the alleged violation, the contours of the right were sufficiently clear that a reasonable official would understand that his actions violate that right . . . ." *Id.*  Courts have discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Leverington v. City of Colo. Springs*, 643 F.3d 719, 732 (10th Cir. 2011).

###### B.   Plaintiff's First Amendment Claim Fails the *Garcetti/Pickering* Test

Plaintiff alleges that Defendants violated his First Amendment right to be free from retaliation for speaking as a private citizen on a matter of public concern when Defendants terminated him for reporting Sheriff Baca's proposed improper promotion to Human Resources Director Monsibaiz. *Doc. 20* at 9.  Defendants respond that Plaintiff was in fact speaking in his official capacity when he spoke with Ms. Monsibaiz and has failed to demonstrate that his speech is protected, citing the *Garcetti/Pickering*[2] test.  *Doc. 98*, Ex. 1 at 11; *Dixon v. Kirkpatrick*, 553 F.3d 1294, 1301-2 (10th Cir. 2009).

---

[2] *See Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968) and *Garcetti v. Ceballos*, 547 U.S. 410 (2006).

Because the speech in question occurred while Plaintiff was a public employee, Defendants are correct that the *Garcetti/Pickering* test applies to determine whether the Plaintiff's First Amendment rights were violated. *Casey v. W. Las Vegas Indep. Sch. Dist.*, 473 F.3d 1323, 1328 (10th Cir. 2007). As the Tenth Circuit has articulated it, the test consists of a five-step analysis: "(1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct." *Brammer–Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1202-03 (10th Cir. 2007).

    **1.**  *Plaintiff's speech was not made pursuant to his official duties.*

On the first prong, if the employee speaks pursuant to his official duties, then there is no constitutional protection because the restriction on speech "simply reflects the exercise of employer control over what the employer itself has commissioned or created." *Garcetti*, 126 S. Ct. at 1960. Plaintiff contends that, when he made his complaint to Ms. Monsibaiz, he did so as a private citizen. *Doc. 20* at 8-9. Defendants counter that because Plaintiff "believed that inquiring about the position of corporal for a subordinate officer" was part of his employment responsibilities, his complaint about

the improper promotion falls within the scope of his official duties because it "contribute[d] to or facilitate[d]" Plaintiff's performance of his official duties. *Doc. 98,* Ex. 1 at 7, 13; *Thomas v. City of Blanchard,* 548 F. 1317, 1324 (10th Cir. 2008) (citing *Brammer-Hoetler,* 492 F.3d at 1203).

The determination of whether the speech at issue is made pursuant to Plaintiff's official duties is made from a "practical" perspective. *Casey,* 473 F.3d at 1238 n.5 (citing *Garcetti,* 126 S. Ct. at 1961). Post-*Garcetti* case law on this issue has further clarified that the speech may be considered official if it is within the employee's "portfolio" of job duties, or even if it merely facilitates the performance of that job. *Casey,* 473 F.3d at 1329; *Brammer-Hoetler,* 492 F.3d at 1203. By the same token, however, not all speech that occurs at work is *per se* part of an employee's official duties, even if it pertains to the subject matter of the employee's job. *Garcetti,* 126 S. Ct. at 1959-60.

In *Brammer-Hoetler,* the Tenth Circuit addressed whether the filing of grievances by teachers at a private school constituted part of their official duties in light of a policy encouraging them to do so. 492 F.3d at 1204. In determining whether the grievances were part of the teachers' official duties, the Court distinguished between complaints directly related to the act of teaching, such as student control and curriculum issues, which the Court held to be pursuant to official duties, and those not so related, such as criticism of their supervisor, salaries, and school board elections. *Id.* at 1204-05. In making this distinction, the Court specifically noted that the teachers had "no

10

supervisory responsibility and no duty to report with regard to any of the [non-teaching related] problems being discussed." *Id.* at 1205.

The same distinction is applicable here.  At the time the incident occurred, Plaintiff was a corporal with the Sheriff's Department.  According to his job description, his duties, as they related to personnel, included preparation and delivery of in-service training, serving as supervisor in the absence of the sergeant, and acting as a field training officer for new recruits. RP at 180-181.  While Plaintiff's job description is not dispositive, it is relevant that Plaintiff was expected to have only a very limited supervisory role and no duties related to promotion of subordinates.  *Brammer-Hoetler*, 492 F.3d at 1203.  Further, even if the promotion of subordinates could be treated as "generally consistent with the type of activities" Plaintiff was paid to perform, it is a step too far to say that complaining about an improper promotion is inextricably related.  *Id.* (quoting *Green v. Bd. of Cnty. Comm'rs*, 472 F.3d 794, 798 (10th Cir. 2007)). Recommending a subordinate for promotion can conceivably be linked to Plaintiff's supervisory and training duties.  Complaining about an improper promotion made in violation of County policy, by contrast, cannot, because Plaintiff has no official duties related to enforcing County employment policy.  Therefore, Plaintiff's speech was not made pursuant to his official duties under the first prong of *Garcetti/Pickering*.

2.      *Plaintiff's speech did not involve a matter of public concern.*

The next prong of *Garcetti/Pickering* requires a determination of whether Plaintiff's speech involved a "matter of public concern." Matters of public concern are "those of interest to the community, whether for social, political, or other reasons." *Lighton v. Univ. of Utah*, 209 F.3d 1213, 1224 (10th Cir. 2000) (citing *Lytle v. City of Haysville*, 138 F.3d 857, 863 (10th Cir. 1998)).  When the speech at issue involves the disclosure of a public official's malfeasance or wrongdoing, it is often a matter of public concern. *See Schalk v. Gallemore*, 906 F.2d 491, 494 (10th Cir. 1990).  Where, however, the supposed malfeasance involves an internal departmental affair and personal interest alone, it is not a matter of public concern.  *Hom v. Squire*, 81 F.3d 969, 974 (10th Cir. 1996).

In *Hom*, the plaintiff alleged he had been fired in retaliation for filing grievances against his supervisors for using supposedly illegal bidding processes, seeking leave time, and in response to a supervisory reprimand. 81 F.3d at 972.  The Court held that the subject of each of these grievances did not constitute matters of public concern, but rather only related to internal departmental issues and personal interest.  Likewise, it is difficult to see how Plaintiff's concern about Sheriff Baca's improper promotion falls outside the definition of an internal departmental issue.  While it is true that Plaintiff did not, as was the case in *Hom*, bring his complaint on his own behalf, but instead on behalf of his subordinate, the only people affected by the misconduct would have been

12

those people within the Sheriff's department eligible for promotion.[3]  *Doc. 110*, Ex D. at

14:24-15:9; 15:21-16:8.  Further, Sheriff Baca only arguably violated Sierra County

employment policy.  Plaintiff's concern about the improper promotion was the fact that

Sheriff Baca had apparently offered the promotion to Officer Montoya without posting

the job publicly.  *Doc. 110*, Ex. D at 15:21-16:8.  In fact, Plaintiff admitted that he later

found out the position had been posted, albeit not in the location he expected.  *Id.* at

16:22-17:1.  And when Ms. Monsibaiz brought the grievance to Sheriff Baca's attention,

the offer of promotion was rescinded and the position reposted. *Doc. 110*, Ex. C at 23:13-

25:4.  Considering the limited effect/consequences of the alleged policy violation, this

situation appears to be precisely the kind of internal departmental issue that falls

outside the realm of public concern.  As such, Plaintiff's complaint regarding the

improper promotion was not protected speech as defined under the *Garcetti/Pickering*

test.

     **3**.    ***Plaintiff cannot establish that the speech was a motivating factor in the adverse employment action.***

     Even if the speech were protected, Plaintiff bears the burden of establishing that

it was a cause of his termination.  As the Court concluded in the Order granting

summary judgment as to the New Mexico Whistleblower Protecting Act (*doc. 122*),

establishing this causal link requires proof that an acting official knew about the

---

[3] In fact, ultimately there were only two applicants for the position: Officer Jones and Officer Montoya. *Doc. 110*, Ex. C at 23:1-6.

protected speech.  *See Rohrbough v. Univ. of Colo. Hosp. Auth.*, 596 F.3d 741, 750 (10th Cir. 2010) (plaintiff did not meet the fourth prong of the *Garcetti/Pickering* analysis because of the failure to present any "evidence whatsoever that [he] told [her supervisor] of the speech.").  Otherwise, there could be no basis on which to conclude that the termination was retaliation for the protected speech.  As described more fully in the prior order, the record before the Court does not contain facts sufficient for a reasonable jury to infer the knowledge of either decision-maker (Defendant Baca and Manager Carrejo).  *See doc. 122* at 11-16.  Thus, even if Plaintiff's speech was protected, he has failed to establish the necessary causation to show a constitutional violation.

As a matter of law, Plaintiff cannot establish a violation of his First Amendment rights.  Thus, Defendant Baca is entitled to qualified immunity and Defendant Sierra County is entitled to judgment as a matter of law on this Count.

### C.    Plaintiff's Fourteenth Amendment Claim Procedural Due Process Claim Fails

Plaintiff contends that he was denied his procedural due process rights in violation of the Fourteenth Amendment when he was denied the ability to present evidence of Sheriff Baca's supposedly retaliatory actions related to Plaintiff's termination via cross-examination of witnesses at his post deprivation hearing.  *Doc. 111* at 5.  Defendants argue that Plaintiff received the appropriate level of process through both the pre-termination and post-deprivation hearings wherein he was provided with more than adequate opportunity to be heard.  *Doc. 98* at 15-18.

The Fourteenth Amendment protects citizens from the deprivation of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Procedural due process guarantees that a state will not deprive a person of life, liberty or property "unless fair procedures are used in making that decision." *Archuleta v. Colo. Dep't of Insts., Div. of Youth Servs.*, 936 F.2d 483, 490 (10th Cir. 1991). In deciding if a plaintiff has been denied this right, the Court performs a two-step inquiry: "(1) Did the individual possess a protected interest to which due process protection was applicable? (2) Was the individual afforded an appropriate level of process?" *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1253 (10th Cir. 1998).

Defendants concede that Plaintiff had a protected property interest in his position with the Sheriff's Department. *Doc. 98* at 15. Therefore, the only issue before the Court is whether Plaintiff received the appropriate level of process. Where the protected property interest is in continued employment, due process may be satisfied via either a pre- or post-termination hearing. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542-43 (1985); *Copelin-Brown v. N.M. State Pers. Office*, 399 F.3d 1248, 1255 (10th Cir. 2005) (citation omitted). Plaintiff, like the plaintiff in *Copelin-Brown*, challenges the adequacy of the post-deprivation hearing. In determining whether the post-termination proceeding comports with procedural due process, the Court must examine also the adequacy of the pre-termination procedure. *Copelin-Brown*, 399 F.3d at 1255 ("To evaluate the constitutionality of post-termination process, we must view it in light of

15

the pre-termination procedures it follows.").  The more extensive the pre-termination

proceedings, the less is required of the post-termination proceedings to satisfy due

process. *Benavidez v. City of Albuquerque*, 101 F.3d 620, 627 (10th Cir. 1996).

In *Loudermill*, the Supreme Court explained that to satisfy due process, the pre-

termination hearing needed to provide "notice and an opportunity to respond. The

opportunity to present reasons, either in person or in writing, why proposed action

should not be taken is a fundamental due process requirement. The . . . employee is

entitled to oral or written notice of the charges against him, an explanation of the

employer's evidence, and an opportunity to present his side of the story." 470 U.S. at

546.

Here, Plaintiff was provided with notice of his proposed termination on March 1,

2012.  RP at 64-65.  That notice set forth the reasons for which Plaintiff's termination was

being pursued and also provided the date of the pre-termination hearing (March 22,

2012).  *Id.*  It further stated that "you have the right . . . to introduce the testimony of any

witnesses and any material facts you believe responds to the proposed disciplinary

action." RP at 65.  Plaintiff requested on March 14, 2012, and received on March 16 and

19, 2012, significant discovery with which to prepare for the pre-termination hearing.

RP at 66-69.  At the hearing, County Manager Carrejo presided and Sheriff Baca

presented the basis for Plaintiff's termination.  *See generally* RP at 420-578.  Lieutenant

Hamilton, the author of the accident report, and Deputy Ohst, who was with Plaintiff at

16

the time of the accident, both testified and, during that testimony, Plaintiff had ample

opportunity to add his own testimony and to respond directly to questions from the

hearing officer.  *See e.g.* RP at 441-444, 451-459, 469-472, 514-530, 534-537.   In spite of

being given the chance to raise the issue of retaliation at the pre-termination hearing,

Plaintiff failed to do so.

    The record demonstrates that Plaintiff received an extensive pre-termination

hearing for which he had notice and in which he had ample opportunity to examine the

evidence against him and to present evidence of his own. As such, Plaintiff's post-

termination proceeding only needed to provide him with "some opportunity" to put

forth his side of the case.  *Benavidez*, 101 F.3d at 627 .

    Plaintiff's sole complaint with regard to the post-deprivation hearing is that he

was unable to present his theory of retaliation through the cross-examination of certain

witnesses.  But in light of the fact that the post-termination process available to Plaintiff

included a hearing where Plaintiff could be, and was, represented by counsel, had the

opportunity to present evidence, and was permitted cross-examine witnesses, although

in a more limited fashion than he would have preferred, the Court cannot say that

Plaintiff has stated a procedural due process violation.  *See id.* at 627.

     As a matter of law, Plaintiff cannot establish a violation of his right to

procedural due process.  Thus, Defendant Baca is entitled to qualified immunity and

Defendant Sierra County is entitled to judgment as a matter of law on this Count as well.

**V.     CONCLUSION**

For the forgoing reasons, Defendants' Motion for Summary Judgment on Plaintiff's Civil Rights Claims (*doc. 98*) is GRANTED.  Count II (First Amendment) and Count III (Procedural Due Process) against Defendants Joe Baca and Sierra County are DISMISSED WITH PREJUDICE.

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE
**Presiding by consent**